IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RYAN TYREL COBBS,

      Petitioner,

v.                                                                    No. 1:23-cv-00825 KG/GJF
                                                      No. 5:21-cr-00720 KG

UNITED STATES OF AMERICA,

      Respondent.

<u>MEMORANDUM OPINION AND ORDER</u>

      This matter comes before the Court upon Ryan Tyrel Cobbs' Motion Under 28 U.S.C.

Section 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.   (Doc.

1) (Motion).[1]   Petitioner is a federal prisoner and proceeding *pro se*.   He asks the Court to

vacate his firearm convictions based on ineffective assistance of pretrial and sentencing counsel.

The United States responded with supporting supplemental materials, (Doc. 9), and Mr. Cobbs

filed a Reply, (Doc. 10).   Having reviewed the record, the supplemental materials filed by the

United States, and the relevant law, the Court will dismiss the Motion and deny a certificate of

appealability.

I.     <u>Background</u>

      On August 2, 2020, officers with the Hobbs Police Department executed a search warrant

at Mr. Cobbs' house to find a stolen cell phone.   The search revealed seven firearms, including a

sawed-off shotgun, ammunition, methamphetamine, scales, empty baggies, and a pill bottle full

of small rubber bands.   Two of the firearms had been reported stolen.   Mr. Cobbs was a

---

[1] Citations to (Doc. __) are to documents filed in the Civil Case No. 1:23-cv-825, and citations to (Cr. Doc. __) are to documents filed in the Criminal Case No. 5:21-cr-720.

convicted felon.

On October 18, 2021, Mr. Cobbs pleaded guilty to one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and one count of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5871.   (Cr. Doc. 22).   On September 1, 2022, the Court accepted the plea without the benefit of a plea agreement.   (Cr. Doc. 46) (Sentencing Transcript).   Mr. Cobbs was sentenced to a total term of 57 months imprisonment and 3 years of supervised release.   (Cr. Doc. 38) (Judgment).   He did not appeal.

Mr. Cobbs timely filed the instant Motion pursuant to Section 2255.   In claim one, he contends his pretrial counsel was ineffective for failing to: (1) inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial, (2) conduct a proper pretrial investigation; and (3) negotiate a more favorable plea agreement.   In claim two, he asserts his sentencing counsel was ineffective for failing to: (1) properly explain the presentence investigation report ("PSR") prior to his sentencing; (2) file objections to the PSR; and (3) file a notice of appeal.   The Court notes he was represented by the same attorney for both his plea and sentencing.

II.   Discussion

A petition under Section 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).   Relief is available where "the sentence was imposed in violation of the Constitution or laws of the United States," including the Sixth Amendment right to effective counsel.   28 U.S.C. § 2255(a).   *See also U.S. v. Tucker*, 745 F.3d 1054, 1066 (10th Cir. 2014) ("Sixth Amendment claims asserting ineffective assistance of counsel can and generally must be brought in a habeas action for post-conviction relief under 28

2

U.S.C. § 2255.").

A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   First, the petitioner must show "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   *Id.* at 688.   In other words, the representation must fall below an objective standard of reasonableness based on prevailing professional norms.   *Id.* at 687-88.   The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably."   *Welch v. Workman*, 639 F.3d at 980, 1012 (10th Cir. 2011) (quotations omitted).   The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."   *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)); *Williamson v. Ward*, 110 F.3d 1508, 1514 (10th Cir. 1997) ("There is a strong presumption that counsel's performance falls within the wide range of professional assistance, the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.") (citations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense.   *Battenfield v. Gibson*, 236 F.3d 1215, 1234 (10th Cir. 2001) (citing *Strickland*, 466 U.S. at 693-693).   The movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   In the context of pleas, the

3

petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). *See also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("[A] defendant must show the outcome of the plea process would have been different with competent advice"). Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

    A. *Claim 1: Ineffective Assistance of Pretrial Counsel*

        1. *Failure to Communicate the Consequences of Pleading Guilty*

Mr. Cobbs contends his counsel, Mr. Imtiaz Hossain, was ineffective for failing to inform him of the consequences of pleading guilty as opposed to proceeding to trial. (Doc. 1) at 5. He claims there was a lack of "reasonable communication" between himself and his counsel, which prevented him from participating in his defense. (Doc. 2) at 13. Mr. Cobbs argues that Mr. Hossain "failed to provide any strategic plans as to how they could fight his case," and should not have discouraged him from proceeding to trial based on the "pure assumption" that "he would be charged severely." *Id.* at 13-14.

"The procedures under which a challenged plea was taken play an important . . . role in determining the validity of the plea." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). "[S]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.

Here, Mr. Cobbs is essentially contending that his plea was not made knowingly and voluntarily due to his counsel's failure to communicate the consequences of pleading guilty. This argument, however, is belied by the record.    At his change of plea hearing on October 18, 2021, the Honorable Carmen E. Garza, United States Magistrate Judge, conducted an extensive plea colloquy, which included the following:

> THE COURT:   All right.   So you have certain rights I need to advise you of. You have the right to plead not guilty and to have a jury trial.   At a jury trial, you'd have the right to an attorney and to a court appointed attorney if you cannot afford one.   At a trial, you would have the right to confront witnesses against you and to cross-examine them under oath.   At a trial, you would have the right to present evidence, to testify and to compel witnesses to come to trial and testify on your behalf.   At a trial, you would have the right to remain silent, not to testify, and it would be your decision whether to testify.   You are presumed innocent, and it's the government's burden to prove beyond a reasonable doubt that you are guilty.   If you plead guilty, there will not be a trial and you will give up the rights I've just described.   Did you understand those rights, Sir?
>
> MR. COBBS:   Yes, ma'am.
>
> THE COURT:   And do you understand if you plead guilty today, you'll give up those rights?
>
> MR. COBBS:   Yes, ma'am.
>
> THE COURT:   All right, Now, is anyone forcing you or threatening you to plead guilty today?
>
> MR. COBBS:   No, ma'am.
>
> THE COURT:   And has anyone promised you anything to get you to plead guilty?
>
> MR. COBBS:   No, ma'am.
>
> . . .
>
> THE COURT:   Did you discuss this with your attorney before you signed it?
>
> MR. COBBS:   Yes, ma'am.   I did.

. . .

THE COURT:   And what is the maximum penalty please?

GOVERNMENT:   Yes, your honor, as to both counts.   The defendant faces a term of imprisonment of up to 10 years, up to three years of supervised release, and a $100 special penalty assessment.   As to count 1, there's a maximum fine of $250,000 dollars.   And as to count 2, there's a maximum fine of $10,000 dollars.

THE COURT:   All right. Sir, do you understand those penalties?

MR. COBBS:   Yes, ma'am.

. . .

THE COURT:   All right. Now, have you talked to your attorney about all the facts and circumstances of your case?

MR. COBBS:   I believe so. Yes ma'am.

THE COURT:   Are you satisfied with his advice and his representation of you?

MR. COBBS:   Yes, ma'am.

THE COURT:   Have you had enough time to talk to him before appearing before me today?

MR. COBBS:   I believe so. Yes, ma'am.

. . .

THE COURT:   Now, I'm sure that your attorney has talked to you.   Let's see, about your sentence.   And I'm sure he's told you what he thinks you will receive. Do you understand that what he's told you is his best estimate of what you will receive?

MR. COBBS:   Yes, ma'am.

THE COURT:   Do you understand you can receive a sentence that's different or harsher than what he's told you?

MR. COBBS:   Yes, ma'am.

THE COURT:   All right.   Has he talked to you about the Federal Sentencing
Guidelines and how they might apply?

MR. COBBS:   Yes, ma'am.

THE COURT:   You understand that although those guidelines are advisory, a
judge will consult them in order to determine your sentence?

MR. COBBS:   Yes, ma'am.

(Doc. 9-1) at 4-5, 7-9 (Gov't Ex. 1).

A review of the above plea colloquy conducted during the plea hearing evidences that
Mr. Cobbs' guilty plea was free from force or threat and entered into with the requisite
understanding.   Mr. Cobbs affirmed he reviewed the facts and circumstances of the case with his
counsel.   Judge Garza reviewed the sentencing consequences Mr. Cobbs could face by pleading
guilty, including that he could receive a term of imprisonment as to both counts of up to 10 years
and up to three years of supervised release.   Mr. Cobbs affirmed he understood those
consequences.   Mr. Cobbs also indicated he understood that the sentence his attorney suggested
might be imposed by the Court was only an estimate and not a guarantee.   Judge Garza
discussed other consequences of pleading guilty; Mr. Cobbs verified that he had discussed such
consequences with his attorney and understood them.   Judge Garza determined Mr. Cobbs was
aware of the nature of the charges against him and the consequences of pleading guilty, and she
found his plea to be knowing and voluntary.   The plea colloquy supports the conclusion that Mr.
Cobbs knowingly and voluntarily entered into his guilty plea.   *See United States v. Kutilek*, 260
App'x 139, 145 (10th Cir. 2008) (relying on plea colloquy to find that defendant's plea was
knowing and voluntary).   The Tenth Circuit consistently "denie[s] relief under . . . § 2255 to
petitioners alleging that their guilty pleas were the product of ineffective assistance when their

7

plea colloquies demonstrated otherwise." *Holt v. Brace,* 418 Fed. App'x 697, 701 (10th Cir. 2011) (collecting Tenth Circuit cases).

At the sentencing hearing, Mr. Hossain represented to the Court, with Mr. Cobbs present, that he "had multiple discussions at length about . . . the circumstances and nature of the offense and how [they] wish[ed] to proceed," and "[u]ltimately . . . Mr. Cobbs did accept full responsibility for anything -- everything." (Cr. Doc. 46) at 5. This representation was supported by Mr. Cobbs' statement later in the hearing, in which he attested to the Court that he had consulted with his attorney and received "a clear explanation of the law that [he had], indeed, broken[.]" *Id.* at 14. "A defendant making an ineffectiveness claim on a counseled guilty plea must identify particular acts and omissions of counsel tending to prove that counsel's advice was not within the wide range of professional competence." *Moore v. United States,* 950 F.2d 656, 660 (10th Cir. 1991). Here, Mr. Cobbs simply has not identified any such acts. *See United States v. Campos,* 2007 WL 9734048, at *4 (D.N.M. June 26, 2007) (general argument that counsel "failed to investigate, interview her, explain any type of strategy, or advise her of the consequences of pleading guilty" without identifying the specifics "are too conclusory to provide a basis for relief."). Mr. Cobbs fails to show that his counsel's performance was constitutionally deficient.

Further, Mr. Cobbs fails to establish any prejudice from the alleged errors. He has made no showing that he would have elected to forgo his guilty plea and proceed to trial if he had a more involved discussion with his attorney about the consequences of pleading guilty. *See Cardenas-Uriarte v. United States,* 2013 WL 12327787, at *5 (D.N.M. Nov. 18, 2013), *report and recommendation adopted,* 2014 WL 12796936 (D.N.M. Feb. 12, 2014) ("It is beyond

dispute that, at his plea hearing and prior to entering a guilty plea, Petitioner was advised of the consequences of pleading guilty including that he could receive a term of imprisonment up to 40 years.   Therefore, Petitioner cannot show he was prejudiced by counsel's supposed failure to describe those same consequences.").   Consequently, Mr. Cobbs has established neither deficient performance nor prejudice, and thus he fails to show ineffective assistance counsel under *Strickland*.

### 2.   Failure to Conduct a Proper Pretrial Investigation

Mr. Cobbs contends his pretrial counsel was ineffective for failing to conduct an adequate and independent pretrial investigation.   (Doc. 1) at 5.   Specifically, Mr. Cobbs complains that Mr. Hossain "failed to research the case law," "interview witnesses or investigate the facts," and "move the Court for a private investigator to independently investigate his case."   (Doc. 2) at 15. Mr. Cobbs does not identify any of the witnesses Mr. Hossain should have interviewed, nor does he explain what evidence or case law his counsel failed to uncover.   He also does not offer any substance as to what information a private investigator would have revealed or how it would have produced a different result with respect to his decision to plead guilty.   Conclusory allegations simply do not suffice to establish constitutionally deficient performance.   *See Hatch v. Oklahoma*, 58 F.3d 1447, 1459, 1471-72 (10th Cir. 1995) (allegations of ineffective assistance must be specific and particularized; conclusory allegations are insufficient and do not warrant an evidentiary hearing); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (The court is not required to "fashion [d]efendant's arguments for him where his allegations are merely conclusory in nature and without supporting factual averments.").

To satisfy the prejudice prong of the *Strickland* test for ineffective assistance of counsel,

a defendant must specifically show what beneficial evidence a "proper" investigation would have

produced. *United States v. Manriquez-Rodriguez*, 182 F.3d 934 (10th Cir. 1999) (unpublished)

(citing *Hendricks v. Calderon*, 70 F.3d 1032, 1042 (9th Cir. 1995); *United States v. Ashimi*, 932

F.2d 643, 649 (7th Cir. 1991)).   Simply speculating that investigation might have resulted in

something useful will not suffice.   *Id.*   Further, Mr. Cobbs has not demonstrated a reasonable

probability that, but for the alleged investigative error, he would not have pleaded guilty and

would have insisted on proceeding with his trial.   *Romero v. Tansy*, 46 F.3d 1024, 1033 (10th

Cir. 1995) (where a defendant alleges his counsel failed to adequately investigate the charges to

which he pleaded guilty, he must show what the investigation would have uncovered and how

that would have altered his decision to plead guilty).

　　　　Mr. Cobbs' conclusory argument also fails to hold weight because it is contrary to the

representations he made to the Court during his sentencing hearing:

> THE COURT:   Mr. Cobbs, are you satisfied with how Mr. Hossain has
> represented you?"
>
> MR. COBBS:   Mr. Hossain has done a good job.   At first, I was not.   I didn't
> feel like I was guilty of felon in possession of a firearm because I didn't -- I felt
> like I didn't possess a firearm.   But after conversating [sic] with him and reading
> the law – I've read through the law library a few times at the facility -- I mean,
> yes, I'm, indeed, guilty of felon in possession of a firearm because the home I was
> staying in contained firearms.

(Cr. Doc. 46) at 22-23.   Mr. Cobbs confirmed he discussed the charges with his attorney and

understood he was guilty after independently reviewing relevant case law.   Consequently, Mr.

Cobbs has established neither deficient performance nor prejudice, and thus he fails to show

ineffective assistance of counsel under *Strickland*.

### 3. *Failure to Negotiate a More Favorable Plea Agreement*

Mr. Cobbs contends his counsel was ineffective for failing to attempt to negotiate a better plea agreement. (Doc. 1) at 5. Mr. Cobbs claims Mr. Hossain "coerced" him "to accept the plea offer or else he [would] get [a] life sentence for a possible ACCA [Armed Career Criminal Act] enhancement." (Doc. 2) at 17. This argument fails for two reasons. First, the Government did not extend a plea offer to Mr. Cobbs; therefore, there was no opportunity for Mr. Hossain to negotiate a "better" agreement. Two, as discussed above, at Mr. Cobbs' plea hearing, Judge Garza found that Defendant knowingly, intelligently, and voluntarily changed his plea to guilty. This determination was made after Mr. Cobbs confirmed under oath that no one was forcing or threatening him to plead guilty, and that he understood his sentence could be "different or harsher" than whatever Mr. Hossain estimated or predicted. *See* (Doc. 9-1) at 4, 9.

Additionally, the Government attached an affidavit from Mr. Hossain, wherein he attests to the following:

> Due to the strength of the Government's case, Mr. Cobbs decided to enter a plea of guilty. The negotiations amounted to whether Mr. Cobbs would be pleading guilty with or without a plea agreement. I discussed these options with Mr. Cobb which included the right to appeal that he would retain if he chose to plead guilty without the benefit of a plea agreement. Mr. Cobbs knowingly and voluntarily entered a plea of guilty straight to the indictment on October 18, 2021, thus preserving his appellate rights and maintaining the ability ask for any legally available sentence. The Court adjudged Mr. Cobbs guilty after a thorough allocution and deemed the plea of guilty as freely, knowingly, and intelligently.

(Doc. 9-3) at 1 (Affidavit).

Relevantly, Mr. Hossain successfully objected to a 4-level upward adjustment, which was applied in the PSR pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2K2.1(b)(6)(B), based on evidence that Mr. Cobbs possessed a firearm in connection with another felony offense.

(Cr. Doc. 34).   At sentencing, the parties informed the Court that a 4-level upward adjustment in the Guideline calculation would not be pursued by the United States upon Mr. Hossain's objection because, while there was evidence of methamphetamine in the residence where Mr. Cobbs possessed the firearm, there was insufficient evidence to establish by a preponderance of evidence it was related to felony drug trafficking.   (Cr. Doc. 46) at 2-3.   As a result, the Total Offense Level was reduced from 27 to 23.   *Id.*   Although the United States did not offer a plea deal to Mr. Cobbs, the record reflects Mr. Hossain's effective assistance of counsel in arguing in favor of a sentence much lower than the original Guideline calculation.   *See, e.g.*, *United States v. Garcia*, 413 Fed. Appx. 57, 60 (10th Cir. 2011) (no ineffective assistance for failure to negotiate where the defendant's 180-month sentence was 30 months below the bottom of the pertinent Guidelines range).   Moreover, Mr. Cobbs fails to show how he was prejudiced by his counsel's alleged failure to negotiate.   He does not argue that but for the alleged deficiency he would not have pleaded guilty and instead would have insisted on going to trial.   *See Hill*, 474 U.S. at 58-59.   Again, his bare allegations are insufficient to satisfy the *Strickland* standard.

B.   *Claim 2: Ineffective Assistance of Sentencing Counsel*

1.   *Failure to Properly Explain the PSR Prior to his Sentencing*

Mr. Cobbs argues Mr. Hossain provided ineffective assistance of counsel because he did not review, discuss, or explain the PSR to him so that he could understand the sentencing calculations.   (Doc. 2) at 19.   This contention is directly contradicted by the record.   During his sentencing, the undersigned asked Mr. Hossain, with Mr. Cobbs present, whether they reviewed the PSR together:

THE COURT:   Okay.   And you both reviewed the report [PSR] together?

12

MR. HOSSAIN:   Yes, Your Honor.   We talked about it, yes.   We have nothing to add.

(Cr. Doc. 46) at 3.   Notably, Mr. Cobbs did not inform the Court that Mr. Hossain was being

untruthful in his response.

Then, the undersigned explicitly asked Mr. Cobbs if he understood the sentencing

calculations:

> THE COURT:   . . . do you understand how the Guidelines work?   In other
> words, they're just suggestions to the Court.   I'm not bound to follow them.   Are
> you aware of this?
>
> MR. COBBS:   Yes, sir.
>
> THE COURT:   You know, we're talking about a range of 57 to 71 months?
>
> MR. COBBS:   Yes, sir.
>
> THE COURT:   That's a long time.
>
> MR. COBBS:   Yes, sir, very long time.
>
> THE COURT:   Do you know, just as Mr. Hossain has asked me to go down, I
> have the authority to go up?
>
> MR. COBBS: Yes, sir.

(Cr. Doc. 46) at 12-13.

A petitioner's bare allegation that his counsel failed to adequately explain his PSR is

insufficient to refute his sworn statement to the contrary.   *See United States v. Lemaster*, 403

F.3d 216, 221-22 (4th Cir. 2005) (indicating that, absent "extraordinary circumstances,"

allegations in a § 2255 motion that directly contradict the petitioner's prior sworn statements are

considered "patently frivolous or false"); *see also Blackledge*, 431 U.S. at 74 ("Solemn

declarations in open court carry a strong presumption of verity.").   Consequently, Mr. Cobbs has

established neither deficient performance nor prejudice, and thus he fails to show ineffective

assistance of counsel under *Strickland*.

2.   *Failure to File Objections to the Presentence Report*

To the extent Mr. Cobbs is asserting Mr. Hossain failed to file any objections to the

PSR, including a challenge to the firearm enhancement, such a statement is factually inaccurate.

The record plainly demonstrates that Mr. Hossain successfully objected to the enhancement of

four levels, pursuant to U.S.S.G. § 2K2.1(b)(6)(B), for possession of a firearm in connection

with another felony offense.   As a result of this sustained objection, Mr. Cobbs' total offense

level was corrected from 27 to 23.   *See* (Cr. Doc. 46) at 2-3.

Additionally, Mr. Cobbs contends Mr. Hossain improperly failed to argue "that the

total of 8-level firearm enhancements should have been dismissed due to the fact that the seized

firearms were not his property nor used [in] any crime in relation to any drug trafficking

activities" and he "was not aware that one of the firearm[s] was stolen[.]"   (Doc. 2) at 22.   Mr.

Cobbs believes that if Mr. Hossain put forth these arguments, his Guideline range would have

been reduced from 57-71 months to 37-46 months' imprisonment.   *Id.*

Upon the Court's review of the record, Mr. Hossain's decision not to pursue such an

argument was appropriate because it is without merit.   *See United States v. Orange*, 447 F.3d

792, 797 (10th Cir. 2006) ("If [an] omitted issue is without merit, then counsel's failure to raise it

is not prejudicial, and thus is not ineffective assistance."); *Martin v. Kaiser*, 907 F.2d 931, 936

(10th Cir. 1990) (citing *Strickland*, 466 U.S. at 69) (explaining it is not ineffective assistance of

counsel to fail to make meritless arguments); *see also Chandler v. Moore*, 240 F.3d 907, 917-18

(11th Cir. 2001) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)) (counsel

not ineffective for failing to raise frivolous claims or investigate non-meritorious claims and

14

defenses).

 Mr. Hossain directly addressed the firearm enhancements during the sentencing hearing,

and Mr. Cobbs agreed with the position asserted:

> THE COURT:   Given what I just heard, Mr. Hossain, are you still agreeing with
> the calculated Guideline range here?   In other words, there is a two-level upward
> bump for the number of firearms.
>
> MR. HOSSAIN:   Yes, Your Honor. And the reason for that is that -- I mean,
> essentially, ignorance of the law is not a defense.   And so, although he may not
> have known, I don't -- I didn't find that portion objectionable just based on my
> understanding of the law, as well as the -- sort of the same argument with the
> stolen firearm.   Really, I mean, this is something that he has – we've had lengthy
> discussions about it.   And so I think one of the things that he stressed is that he
> does take full responsibility for it and he should have known.
>
> THE COURT:   Should have known, but didn't know.
>
> MR. HOSSAIN:   Should have known what was in the home that he was,
> essentially, responsible for.
>
> THE COURT:   Mr. Cobbs, are you satisfied with how Mr. Hossain has
> represented you?
>
> MR. COBBS:   Mr. Hossain has done a good job.   At first, I was not.   I didn't
> feel like I was guilty of felon in possession of a firearm because I didn't -- I felt
> like I didn't possess a firearm.   But after conversating [sic] with him and reading
> the law – I've read through the law library a few times at the facility -- I mean,
> yes, I'm, indeed, guilty of felon in possession of a firearm because the home I was
> staying in contained firearms.

(Cr. Doc. 46) at 22.

 Also, Mr. Cobbs admitted he was fully aware that at least five firearms were in his home:

> MR. COBBS:   . . . Now seems the time to add, about three weeks prior to that, I
> had a friend whose name was "Chubs" who said he was going to do 60 days in
> Lea County and if I would hold onto some stuff for him.   I allowed him to take
> and put his -- it was a Pelican case and a couple of suitcases in a closet in my
> house.   That's where the shotgun that's in question that's in here and the Tactical
> Arms .22 came about.   That was amongst his stuff.   And I knew they were there.
> They were both broken, or he said they were broken, they didn't work, but he just

wanted to keep his stuff there until he got out of jail.   I agreed to that.

. . .

Yes, I was aware of my father's firearms, which was the Benelli shotgun, the Ruger .22. I was aware of Tactical .22 and the sawed-off Remington.   Both I understood to be inoperable and rightfully owned.   The FN .9 mm belonged to Matthew Salazar.   I also knew of that because Matt had it with him when he came to work with me.   I asked him to leave it there at the house to avoid an incident such as this.   "Just leave the backpack at the house, we'll go to work, and you can pick it up when we go."

*Id.* at 17.

The first enhancement related to the involvement of multiple firearms in the offense.   *See* U.S.S.G. § 2K2. 1(b)(1)(A) (providing for a two-level increase in offense level if the offense involved three to seven firearms).   The second enhancement related to the involvement of stolen firearms.   *See* U.S.S.G. § 2K2.1(b)(4)(A) (providing for a two-level increase in offense level if the offense involved stolen firearms).   During sentencing, Mr. Cobbs confirmed, as cited above, at least five firearms were in his home that he knew about at the time of the search.   Although he maintained he was unaware as to whether they were stolen, such an inquiry was irrelevant to the application of the enhancement.   Section 2K2.1(b)(4)(A) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen. *See* U.S.S.G. § 2K2.1, comment. (n.8(B)).

Because it is well established that the failure to make a frivolous or meritless objection cannot constitute ineffective assistance of counsel, Mr. Cobbs' counsel was not ineffective for failing to make the additional objections.

### 3.   *Failure to File a Notice of Appeal*

Lastly, Mr. Cobbs argues his counsel was ineffective because he did not advise him about

16

his ability to file a direct appeal after sentencing or discuss any details as to the scope of such an appeal. (Doc. 2) at 22. To establish ineffective assistance of counsel based on a failure to file a notice of appeal, a court must begin by determining which of three mutually exclusive circumstances exist: (1) defendant made a specific request to file an appeal; (2) defendant explicitly told his attorney not to file an appeal; or (3) defendant "neither instruct[ed] counsel to file an appeal nor ask[ed] that an appeal not be taken[.]" *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000).

Here, Mr. Cobbs is the latter circumstance as he does not assert in his motion to vacate or reply that he made a specific request to Mr. Hossain to file an appeal. Rather, he argues his "lack of an explicit request . . . to file an appeal does not conclusively resolve the issue." (Doc. 10) at 28. He also does not contest Mr. Hossain's sworn affidavit attesting that Mr. Cobbs was silent as to any request to appeal. *See* (Doc. 9-3) at 2-3.

While the United States Supreme Court in *Roe v. Flores-Ortega* suggested that the "better practice is for counsel routinely to consult with the defendant about an appeal," it expressly declined to hold as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable and therefore deficient. *Id.* at 479. Instead, a "constitutionally imposed duty to consult" about an appeal exists only where: (1) a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal); or (2) the particular defendant reasonably demonstrated to counsel that he was interested in appealing. *Id.* at 480.

*Flores-Ortega* emphasized that *Strickland* imposes a circumstances-specific reasonableness requirement in the context of the failure to file an appeal and that a reviewing

court must consider "all the information counsel knew or should have known." *Id.* at 480. A guilty plea is a "highly relevant factor," because "a plea both reduces the scope of potentially appealable issues and may indicate that the defendant seeks an end to judicial proceedings." *Id.* In addition, to satisfy the prejudice prong of *Strickland* for failure to file a notice of appeal, a defendant must demonstrate there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed. *Id.* at 484-86.

Mr. Cobbs maintains his counsel was ineffective by failing to consult with him regarding an appeal because of "the lack of a plea agreement and application of various enhancements could present unique grounds for appeal[.]" (Doc. 10) at 27. The Court cannot say that these grounds would be ones that a rational defendant would be keen to pursue. Significantly, Mr. Cobbs received a sentence at the lowest end. The Guideline range for the offenses Mr. Cobbs pleaded guilty to were 57 to 71 months. (Cr. Doc. 46) at 13, 25. Mr. Cobbs was sentenced to the minimum sentence of 57 months. *Id.* at 27. "In the Court's view, the risk of receiving a *higher* sentence outweighs the slim chance that a more favorable result might be obtained through resentencing. *See United States v. Green*, 816 Fed. Appx. 271, 273-76 (10th Cir. June 3, 2020) (unpublished) (ruling that no rational defendant would have desired to file an appeal when the defendant, who did not have a plea agreement, received a within-guidelines sentence, despite his having received an unexpected sentencing enhancement for his admitted perjury during the change-of-plea hearing).

The Supreme Court has recognized at least "two examples of when it would be reasonable for an attorney not to consult [with] a client about appealing:"

> First, suppose that a defendant consults with counsel; counsel advises the
> defendant that a guilty plea probably will lead to a 2 year sentence; the defendant

expresses satisfaction and pleads guilty; the court sentences the defendant to 2
years' imprisonment as expected and informs the defendant of his appeal rights;
the defendant does not express any interest in appealing, and counsel concludes
that there are no nonfrivolous grounds for appeal.   Under these circumstances, it
would be difficult to say that counsel is "professionally unreasonable," as a
constitutional matter, in not consulting with such a defendant regarding an appeal.

Second, suppose a sentencing court's instructions to a defendant about his appeal
rights in a particular case are so clear and informative as to substitute for counsel's
duty to consult.   In some cases, counsel might then reasonably decide that he
need not repeat that information.

*United States v. Herring*, 935 F.3d 1102, 1108 (10th Cir. 2019) (quoting *Flores-Ortega*, 528 U.S.
at 479-80) (cleaned up).   The record, here, shows that Mr. Hossain advised Mr. Cobbs on the
proper sentencing range, and Mr. Cobbs affirmed to the Court that he understood that range prior
to pleading guilty.   Mr. Cobbs was explicitly advised by the Court of his appellate rights and the
short 14-day timeframe for pursing those rights during his sentencing hearing, and he does not
claim that he expressed any interest in appealing after his sentencing.   *See* (Cr. Doc. 46) at 30.
A court's explanation of a defendant's appellate rights during sentencing can "substitute for
counsel's duty to consult."   *United States v. Sanchez[-]Calderon*, 2010 WL 11619202, at *6
(D.N.M. Dec. 9, 2010), *report and recommendation adopted sub nom. United States v. Calderon*,
2011 WL 13291116 (D.N.M. Jan. 31, 2011) (citing *Roe*, 528 U.S. at 479-80).   Further, as
discussed in detail above, any argument against his sentencing enhancements related to the
number of firearms involved and their stolen status would have been without merit.

Finally, Mr. Cobbs makes no showing that he would have appealed his sentence had his
counsel consulted with him.   *See United States v. De La Rosa*, 2004 WL 7337500, at *6
(D.N.M. Oct. 20, 2004) ("if the attorney's failure concerns the duty to consult, then prejudice is
not presumed like it is in the situation where counsel fails to perfect an appeal contrary to the

client's express instruction to do so" and the petitioner "*must demonstrate* that there is a *reasonable probability* that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.") (emphasis in original) (quoting *Flores-Ortega*, 528 U.S. at 484).   Mr. Cobbs makes no statements in support of the prejudice prong.

      For these reasons, the Court cannot find that Mr. Cobbs' counsel was ineffective under *Strickland*.

      C.  *Evidentiary Hearing*

      Mr. Cobbs requests an evidentiary hearing to determine ineffective assistance of counsel. Courts shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."   28 U.S.C. § 2255(b).   In other words, where the record for a Section 2255 motion "conclusively and expressly belie[s] [Petitioner's] claims," no evidentiary hearing is required.   *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also In re Lindsey*, 582 F.3d 1173, 1175-76 (10th Cir. 2009) (holding that an evidentiary hearing is not needed if "the district court has concluded that the record does not entitle the prisoner to relief; either the prisoner has failed even to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations").   For the reasons discussed above, the Court finds that the record is sufficient to dispose of each of Mr. Cobbs' allegations of ineffective assistance of counsel and his allegations do not warrant a hearing.

      D.  *Certificate of Appealability*

      Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."   A certificate of

appealability requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons explained above, the Court finds that reasonable jurists could not debate the denial of Cobbs' Section 2255 motion and, therefore, a certificate of appealability will be denied.

IT IS ORDERED:

1. Petitioner Ryan Tyrel Cobbs' Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1; Cr. Doc. 42) is denied with prejudice.

2. A certificate of appealability is denied.

3. The Court will enter a separate judgment closing the civil habeas case.

/s/ KENNETH J. GONZALES[2]
CHIEF UNITED STATES DISTRICT JUDGE

---

2 Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.